## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.** <u>1:23-cv-00294</u> |
| | ) | |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ANGIODYNAMICS, INC. and** | ) | |
| **NAVILYST MEDICAL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, JAMES MORRIS, (who hereinafter shall be referred to as the "Plaintiff" or as "MORRIS"), by and through his undersigned counsel and brings this Complaint against AngioDynamics, Inc. and Navilyst Medical, Inc. (collectively, the "Defendants"), and alleges as follows:

1.      This is an action for damages arising out of the failure relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the trade name of SmartPort (hereinafter "SmartPort", or "Defective Device").

## PARTIES

2.  Plaintiff, JAMES MORRIS, is an adult resident citizen of Geneva County, Alabama and claims damages as set forth below.

3.  Defendant AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business located in Latham, New York. AngioDynamics is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying,

selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

4.     Defendant Navilyst Medical, Inc. ("Navilyst") is a Delaware corporation with its principal place of business located in Marlborough, Massachusetts. Navilyst conducts business throughout the United States, including the State of Alabama, and is a wholly owned subsidiary of AngioDynamics. Navilyst is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendants' products are produced, sold to and consumed by individuals in the State of Alabama, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District.

7.     Defendants have and continue to conduct substantial business in the State of Alabama and in this District, distribute vascular access products in this District, receive substantial compensation and profits from sales of vascular access products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, so as to subject them to *in personam* jurisdiction in this District.

8.      Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants, because Defendants are present in the State of Alabama, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## PRODUCT BACKGROUND

9.      In or about 2007, a company called Rita Medical Systems, Inc. received clearance via the 510(k) Premarket Notification Program from the Food and Drug Administration (FDA) to market and sell a product called Vortex® CT Port Access System.

10.      Around the same time, AngioDynamics completed the acquisition of the assets and liabilities of Rita Medical Systems, Inc. and rebranded the subject product as SmartPort CT.

11.      Defendants' Vascular Access Devices were designed, patented, manufactured, labeled, marketed, sold, and distributed by the Defendants at all relevant times herein.

12.      The SmartPort is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants.

13.      According to Defendants, the SmartPort is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medication, intravenous fluids, parenteral nutrition solutions, and blood products.

14.      The intended purpose of the SmartPort is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

15.      The SmartPort is a system consisting of two primary components: an injection port and a polyurethane catheter which includes additives intended to make it radiopaque.

16.     The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, that is inserted into a blood vessel.

17.     The SmartPort is indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples.

18.     The product's catheter is marketed under the trade name Fluoromax and is comprised of a polymeric mixture of polyurethane, a barium sulfate radiopacity agent. The Fluoromax catheter was first trademarked by Horizon Medical Products in 2005 and features a blue stripe which contains an even higher concentration of barium sulfate than the remainder of the lumen of the catheter.

19.     Neither Navilyst nor AngioDynamics received clearance from the FDA to market the Fluoromax catheter, making such device *per se* misbranded pursuant to the Food, Drug and Cosmetic Act.

20.     Barium sulfate is known to contribute to reduction of the mechanical integrity of polyurethane *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading the mechanical properties of the polyurethane.

21.     Researchers have shown that catheter surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe.[1]

---

[1] See Hecker JF, Scandrett LA. Roughness and thrombogenicity of the outer surfaces of intravascular catheters. *J Biomed Mater Res*. 1985;19(4):381-395. doi:10.1002/jbm.820190404

22.    The mechanical integrity of a barium sulfate-impregnated polyurethane is affected by the concentration of barium sulfate as well as the heterogeneity of the modified polymer.

23.    Upon information and belief, Defendants' manufacturing process in designing and constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles for the polymer formulation, leading to improperly high viscosity of the admixed polyurethane before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

24.    This defect in the manufacturing process led to a heterogeneous modified polymer which included weakened areas at the loci of higher barium sulfate concentration and led to fracture of the catheter.

25.    Although the surface degradation and resultant mechanical failure can be reduced or avoided with design modifications (e.g., using a higher grade radiopacity compound and/or encapsulating the admixed polymer within polyurethane), Defendants elected not to incorporate those design elements into the SmartPort.

26.    At all times relevant, Defendants misrepresented the safety of the SmartPort system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the SmartPort system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

27.    At all times relevant to this action, Defendants knew and had reason to know, that the SmartPort was not safe for the patients for whom they were prescribed and implanted, because once implanted the device was prone to fracturing, migrating, perforating internal vasculature and otherwise malfunctioning.

28.    At all times relevant to this action, Defendants knew and had reason to know that patients implanted with a SmartPort port had an increased risk of suffering life threatening injuries, including but not limited to: death; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries to remove the defective device.

29.    Soon after the SmartPort was introduced to market, which was years before Plaintiff was implanted with his device, Defendants began receiving large numbers of adverse event reports ("AERs") from health care providers reporting that the SmartPort was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Defendants also received large numbers of AERs reporting that SmartPort was found to have perforated internal vasculature. These failures were often associated with reports of severe patient injuries such as:

    a.   hemorrhage.

    b.   cardiac/pericardial tamponade;

    c.   cardiac arrhythmia and other symptoms similar to myocardial infarction;

    d.   severe and persistent pain;

    e.   and perforations of tissue, vessels and organs; and

    f.   upon information and belief, even death.

30.    In addition to the large number of AERs which were known to Defendants and reflected in publicly accessible databases, there are many recorded device failures and/or injuries related to the Defendants' implantable port products which were concealed from medical professionals and patients through submission to the FDA's controversial Alternative Summary

Reporting ("ASR") program.

31.     The FDA halted the ASR program after its existence was exposed by a multi-part investigative piece, prompting a widespread outcry from medical professionals and patient advocacy groups.[2]

32.     Prior to the discontinuation of the ASR program, Defendants reported numerous episodes of failures of their implanted port/catheter products – including numerous episodes of catheter fracture – under the ASR exemption, thereby concealing them from physicians and patients.

33.     Defendants were aware or should have been aware that the SmartPort had a substantially higher failure rate than other similar products on the market, yet Defendants failed to warn consumers of this fact.

34.     Defendants also intentionally concealed the severity of complications caused by the SmartPort and the likelihood of these events occurring.

35.     Rather than alter the design of the SmartPort to make it safer or adequately warn physicians of the dangers associated with the SmartPort, Defendants continued to actively and aggressively market the SmartPort as safe, despite their knowledge of numerous reports of catheter fracture and associated injuries.

36.     Moreover, Defendants' warnings suggested that fracture of the device could only occur if the physician incorrectly placed the device such that undue catheter compression or "pinch-off" was allowed to occur. In reality, Defendants knew internally these devices were fracturing and causing serious injuries due to defects in the design, manufacturing and lack of

---

[2] Christina Jewett, *Hidden Harm: Hidden FDA Reports Detail Harm Caused by Scores of Medical Devices*, Kaiser Health News (Mar. 2019)

adequate warnings.

37.     The conduct of Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff. Defendants had actual knowledge of the dangers presented by the SmartPort System, yet consciously failed to act reasonably to:

    a.  Adequately inform or warn Plaintiff, his prescribing physicians, or the public at large of these dangers;

    b.  Establish and maintain an adequate quality and post-market surveillance system; or

    c.  Recall the SmartPort System from the market.

### SPECIFIC FACTUAL ALLEGATIONS AS TO JAMES MORRIS

38.     On or about December 30, 2020, Plaintiff underwent placement of the AngioDynamics SmartPort, reference number H787CT75STSD0, lot number 5580324. The device was implanted by Dr. LeRoy Hodges at Troy Regional Medical Center in Troy, Alabama, for the purpose of ongoing chemotherapy.

39.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold the SmartPort that was implanted in Plaintiff.

40.     Defendants manufactured, sold, and/or distributed the SmartPort to Plaintiff, through his doctors, to be used for delivery of chemotherapy.

41.     In or about May 2021, the SmartPort malfunctioned, causing severe injury to Plaintiff.

42.    On or about May 3, 2021, Plaintiff underwent surgery with Dr. Mamatha Kondapalli at Southeast Alabama Medical Center in Dothan, AL to remove the SmartPort and the malfunctioned catheter.

43.    At all times, the SmartPort was utilized and implanted in a manner foreseeable to Defendants, as Defendants generated the instructions for use and created procedures for implanting the product.

44.    The SmartPort implanted into the Plaintiff was in the same or substantially similar condition as when it left the possession of Defendants, and in the condition directed by and expected by Defendants.

45.    Plaintiff and his physicians foreseeably used and implanted the Smartport, and did not misuse, or alter the SmartPort in an unforeseeable manner.

46.    Defendants advertised, promoted, marketed, sold, and distributed the SmartPort as a safe medical device when Defendants knew or should have known the SmartPort was not safe for its intended purposes and that the product could cause serious medical problems.

47.    Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects.

48.    In reliance on Defendants' representations, Plaintiff's doctor was induced to, and did use the SmartPort.

49.    As a result of having the SmartPort implanted, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, permanent and substantial physical deformity, has undergone and will undergo corrective surgery or surgeries, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and present and future lost wages.

50.    Defendants' SmartPort was marketed to the medical community and to patients as safe, effective, reliable, medical devices; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, and as a safer and more effective as compared to the traditional products and procedures for treatment, and other competing Vascular Access Devices.

51.    The Defendants have marketed and sold the Defendants' SmartPort to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and/or group purchasing organizations, and include a provision of valuable consideration and benefits to the aforementioned.

52.    The injuries, conditions, and complications suffered due to Defendants' SmartPort include but are not limited to hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels and organs; and even death.

53.    Despite diligent investigation by Plaintiff into the cause of his injuries, including consultations with his medical providers, the nature of his injuries and damages, and their relationship to the Product was not discovered, and through reasonable care and diligence could not have been discovered until a date within the applicable statute of limitations for filing Plaintiff's claims. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

54.    Plaintiff did not learn of Defendants' wrongful conduct until a time within the applicable statute of limitations. Furthermore, in the existence of due diligence, Plaintiff could not

have reasonably discovered the Defendants' wrongful conduct, including, but not limited to, the defective design and/or manufacturing of the product until a date within the statute of limitations. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the statutory limitations period.

55.     Defendants were negligent toward Plaintiff in the following respects:

a.  Defendants failed to design and establish a safe, effective procedure for removal of SmartPort; therefore, in the event of a failure, injury, or complications it is difficult to safely remove SmartPort.

b.  Defendants provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using SmartPort for the purpose of increasing their sales.  By so doing, Defendants caused the dissemination of inadequate and misleading information to patients, including the Plaintiff.

56.     The SmartPort was utilized and implanted in a manner foreseeable to Defendants.

57.     The SmartPort implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendants, and in the condition directed by the Defendants.

58.     At the time of his operation, Plaintiff was not informed of, and had no knowledge of the complaints, known complications and risks associated with SmartPort.

59.     Plaintiff was never informed by Defendants of the defective and dangerous nature of SmartPort.

60.     At the time of his implant, neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of SmartPort.

61.     At the time of the injuries referenced herein, Plaintiff did not know that the surgery he underwent was due to a defect in these products.

62.     It was not until a time within the applicable statute of limitations that Plaintiff discovered Defendants' wrongful conduct. Furthermore, Plaintiff could not have reasonably discovered the Defendants' wrongful conduct, including but not limited to, the defective design and/or manufacturing of these devices until a date within the statute of limitations. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the statutory limitations period.

63.     Plaintiff has suffered and will continue to suffer physical pain and mental anguish. Plaintiff has also incurred substantial medical bills and has suffered loss of other monies due to the defective product that was implanted in his body.

### COUNT ONE
### Alabama Extended Manufacturer's Liability Doctrine ("AEMLD")

64.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

65.     Defendants are liable to the Plaintiff for the damages sustained based on the AEMLD as the Defendants manufactured, designed, and/or sold the SmartPort a defective device, which, because of its unreasonably unsafe condition, injured the Plaintiff when such product, substantially unaltered, was put to its intended use. Furthermore, Defendants failed to adequately warn the Plaintiff of the unreasonably dangerous nature of this Defective Device.

66.     As a direct and proximate result of the Defendants' defective design, manufacturing defect, and/or Defendants' failure to warn of the SmartPort's dangers, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, surgical

expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

**COUNT TWO**
**NEGLIGENCE AND WANTONNESS**

67.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

68.    The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling and conducting post-market surveillance of the SmartPort.

69.    The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a.    Failing to properly and thoroughly test the SmartPort before releasing the device to market, and/or failing to implement feasible safety improvements;

b.    Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the SmartPort;

c.    Failing to conduct sufficient post-market testing and surveillance of the SmartPort;

d.    Designing, manufacturing, marketing, advertising, distributing, and selling the SmartPort to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the SmartPort and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

e.    Failing to exercise due care when advertising and promoting the SmartPort; and

f.    Negligently continuing to manufacture, market, advertise, and distribute the

13

SmartPort after Defendants knew or should have known of its adverse effects.

70.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

71.    In performing the foregoing acts, omissions, and misrepresentations, Defendants acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

## COUNT THREE
## BREACH OF EXPRESS WARRANTY

72.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

73.    Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the SmartPort was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

74.    The SmartPort does not conform to the Defendants' express representations because it is not reasonably safe, has numerous serious side effects, and causes severe and permanent injury.

75.    At all relevant times, the SmartPort did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

76.    Plaintiff, his physicians, and the medical community reasonably relied upon the Defendants' express warranties for the SmartPort.

14

77.    At all relevant times, the SmartPort was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendants.

78.    Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

79.    As a direct and proximate result of the breach of Defendants' express warranties, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

80.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

81.    At the time Defendants marketed, sold, and distributed the SmartPort, Defendants knew of the use for which the product was intended and impliedly warranted the product to be of safe merchantable quality, safe, fit and effective for such use.

82.    Defendants knew, or had reason to know, that Plaintiff and his physicians would rely on Defendants' judgment and skill in providing the SmartPort for the intended use.

83.    Plaintiff and Plaintiff's physicians reasonably relied upon the skill and judgment of Defendants as to whether the SmartPort was of merchantable quality, safe, fit, and effective for its intended use.

84.    Contrary to such implied warranty, the SmartPort was not of merchantable quality or safe or fit or effective for its intended use, because the product was, and is, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the SmartPort was

used.

85.    As direct and proximate result of the breach of implied warranty of merchantability, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT FIVE
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

86.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87.    At the time Defendants marketed, sold, and distributed the SmartPort, Defendants knew of the particular purpose for which the product was intended and warranted the product to be of safe merchantable quality, safe, fit and effective for such use.

88.    Defendants knew, or had reason to know, that Plaintiff and Plaintiff's physicians would rely on Defendants' judgment and skill in providing the SmartPort for that particular use.

89.    Plaintiff and his physicians reasonably relied upon the skill and judgment of Defendants as to whether the SmartPort was of merchantable quality, safe, fit, and effective for its particular purpose.

90.    Contrary to such implied warranty, the SmartPort was not of merchantable quality or safe or fit or effective for its particular purpose, because the product was, and is, unreasonably dangerous, defective, unfit and ineffective for the particular purposes for which the SmartPort was used.

91.    As direct and proximate result of the breach of implied warranty of fitness for particular purpose, Plaintiff has suffered, and will continue to suffer, severe physical pain and

injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

**COUNT SIX**
**NEGLIGENT MISREPRESENTATION**

92.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

93.    The Defendants made negligent misrepresentations with respect to the SmartPort including, but not limited to, the following particulars:

      a.    The Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that SmartPort has been tested and found to be safe and effective to facilitate the administration or chemotherapy and/or radiation treatments in patients with cancer; and

      b.    The Defendants represented the SmartPort was safer and/or more effective than other port/catheter systems.

94.    Defendants did not exercise reasonable care or competence in obtaining or communicating information to the public regarding the characteristics and qualities of the SmartPort.

95.    Plaintiff and Plaintiff's physicians did, in fact, reasonably rely upon the representations.

96.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the

enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

## COUNT SEVEN
## FRAUDULENT MISREPRESENTATION

97.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

98.    The Defendants made fraudulent misrepresentations with respect to the SmartPort in the following particulars:

a.    The Defendants represented through the labeling, advertising, marketing materials, seminar presentations publications, notice letters, and regulatory submissions that the SmartPort had been tested and found to be safe and effective to facilitate the administration or chemotherapy and/or radiation treatments in patients with cancer; and

b.    The Defendants represented the SmartPort was safer and/or more effective than other port/catheter systems.

99.    Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of the SmartPort to consumers, including Plaintiff, and the medical community.

100.    The representations were made by Defendants with the intent that doctors and patients, including Plaintiff, rely upon them.

101.    The Defendants' representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of the SmartPort.

102.    Plaintiff and his physicians did in fact rely upon the representations. In the absence

of the Defendants' representations, the SmartPort would not be used in medical treatment plans such as the one at issue in this case.

103.    The Defendants' fraudulent representations evinced its callous, reckless, willful, and willful indifference to the health, safety, and welfare of consumers, including Plaintiff.

104.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

105.    The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

## COUNT EIGHT
## FRAUDULENT CONCEALMENT

106.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

107.    Defendants fraudulently concealed information with respect to the SmartPort in the following particulars:

        a.    Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the SmartPort was safe and fraudulently withheld and concealed information about the substantial risks of using the SmartPort; and

b.  Defendants represented that the SmartPort was safer than other alternative systems and fraudulently concealed information which demonstrated that the SmartPort was not safer than alternatives available on the market.

108.  The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the SmartPort.

109.  The concealment of information by the Defendants about the risks of the SmartPort was intentional, and the representations made by Defendants were known by Defendants to be false.

110.  The concealment of information and the misrepresentations about the SmartPort was made by the Defendants with the intent that doctors and patients, including Plaintiff, rely upon them.

111.  Plaintiff and his physicians relied upon the representations and were unaware of the substantial risks of the SmartPort which the Defendants concealed from the public, including Plaintiff and his physicians.

112.  As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

113.  The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendants and others

from engaging in similar conduct in the future.

## COUNT NINE
## FRAUDULENT INDUCEMENT AND SUPPRESSION

114.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

115.    Defendants misrepresented to the Plaintiff and the health care industry the safety and effectiveness of the SmartPort and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of the SmartPort.

116.    Defendants made misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that the SmartPort had defects, dangers, and characteristics that were other than what the Defendants had represented to the Plaintiff and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from the Plaintiff, the health care industry and consuming public that:

  a.    the SmartPort had been tested and found to be safe and effective for use in the administration of chemotherapy and/or radiation treatments; and

  b.    that the SmartPort was safer, better quality and in character than other alternative systems and fraudulently concealed information which demonstrated that the SmartPort was not safer than alternatives available on the market.

117.    The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by Defendants.

118.    Defendants knew or should have known that these representations were false and made the representations with the intent or purpose that the Plaintiff and health care industry would

rely on them, leading to the use of the SmartPort over competing port/catheter systems.

119.    At the time of the Defendants' fraudulent suppression, Plaintiff was unaware of the falsity of the statements being made and believed them to be true. Plaintiff had no knowledge of the information concealed and/or suppressed by the Defendants.

120.    Plaintiff justifiably relied on and/or were induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendants did suppress, conceal or failed to disclose to the Plaintiff's detriment.

121.    Defendants had a post-sale duty to warn Plaintiff and the public about the potential risks and complications associated with the SmartPort in a timely manner.

122.    The misrepresentations and active fraudulent concealment by the Defendants constitute a continuing tort against the Plaintiff.

123.    Defendants made the misrepresentations and actively concealed information about the defects and dangers of the SmartPort with the intention and specific desire that Plaintiff's health care professionals and the consuming public would rely on such or the absence of information in selecting the SmartPort.

124.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

125.    The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct,

in an amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

## **PUNITIVE DAMAGES**

126.    Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff and his health care providers, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the SmartPort. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the device, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same. Defendants further intentionally sought to mislead health care providers and patients, including Plaintiff and his health care providers, regarding the cause of dislodgement and migration failures of the device.

127.    Defendants had knowledge of, and were in possession of evidence demonstrating that, the SmartPort caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the device, notwithstanding Defendants' knowledge of the true serious side effects of the SmartPort, Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the SmartPort and consumers from

agreeing to being implanted with the SmartPort, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the SmartPort.

128.    As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this complaint.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against each of the Defendants as follows:

a.   Judgement be entered against all Defendants on all causes of action of this Complaint;

b.   Plaintiff be awarded his full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.   Plaintiff be awarded general damages according to proof at the time of trial;

d.   Plaintiff be awarded damages, including past, present, and future, medical expenses according to proof at the time of trial;

e.   Plaintiff be awarded punitive damages according to proof at the time of trial;

f.   Awarding pre-judgment and post-judgment interest to the Plaintiff;

g.   Awarding the costs and the expenses of this litigation to the Plaintiff.

h.   For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Dated:  May 3, 2023                          Respectfully submitted,

                                             */s/ Jon Mann*
                                             Jonathan S. Mann (ASB-1083-A36M)
                                             **PITTMAN, DUTTON, HELLUMS,**
                                             **BRADLEY & MANN P.C.**
                                             2001 Park Place North, Suite 1100
                                             Birmingham, AL 35203
                                             Tel:    (205) 322-8880
                                             Fax:    (205) 328-2711
                                             Email: jonm@pittmandutton.com

                                             *Attorney for Plaintiff*