IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES MORRIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ANGIODYNAMICS, INC., *et al.*, | ) ) | CASE NO. 1:23-cv-00294-RAH |
| Defendants. | ) ) ) | [WO] |

## **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

Pending before the Court is the Defendants' *Partial Motion to Dismiss*. (Doc. 30.) With the motion having been fully briefed and thus ripe for decision, the motion is due to be GRANTED.

### **II. FACTS AND PROCEDURAL HISTORY**

Construing the factual allegations in the First Amended Complaint as true, as the Court must at this procedural stage, the facts giving rise to this lawsuit are as follows:

On or about December 30, 2020, Plaintiff James Morris was implanted with Defendant AngioDynamics's SmartPort CT Titanium Port (SmartPort), a vascular access device used during chemotherapy. (Doc. 26 at ¶ 37.) The device was manufactured, sold, and/or distributed by the Defendants to Morris, "through his doctors." (*Id.* at ¶ 40.) The device was cleared by the Food and Drug Administration for marketing and sale in 2007. (*Id.* at ¶ 9.)

On May 3, 2021, Morris was diagnosed with a bilateral pulmonary embolism and a "left internal jugular and subclavian deep venous thrombosis with indwelling

1

Infuse-A-Port." (*Id.* at ¶¶ 42–44.) Morris's SmartPort was then surgically removed where it was noted that the port was clotted. (*Id.* at ¶¶ 46–47.)

Morris's experience with the SmartPort device was not unique to him because, after the SmartPort device was brought to market, Defendants received large numbers of adverse event reports from healthcare providers reporting that the SmartPort, once implanted, "was facilitating and otherwise substantially increasing risks of the development of SmartPort-related thrombus or thrombi." (*Id.* at ¶ 29.)

In this suit, Morris brings eight causes of action against the Defendants concerning his SmartPort: (1) a violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); (2) Negligence and Wantonness; (3) Breach of Express Warranty; (4) Breach of the Implied Warranty of Merchantability; (5) Breach of the Implied Warranty of Fitness for a Particular Purpose; (6) Negligent Misrepresentation; (7) Fraudulent Misrepresentation; and (8) Fraudulent Concealment/Suppression. Defendants seek dismissal of Counts Three through Eight for failure to state a claim upon which relief can be granted. They do not seek dismissal of the counts for negligence, wantonness, or a violation of the AEMLD.

### III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility

standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegation,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a causation of action will not do.'" *Id.*

"To decide whether a complaint survives a motion to dismiss, [district courts] use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegation that are not entitled to an assumption of the truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Here, Morris "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## IV. DISCUSSION

### A. Warranty Claims

Counts Three, Four, and Five of the First Amended Complaint are founded upon alleged breaches of warranty—an express warranty, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. Defendants argue that these three claims are due to be dismissed because pre-suit notice is required under Alabama law and Morris has failed to adequately plead such notice. Defendants also argue that the implied warranty claims are not viable under Alabama law and that Morris did not adequately plead his express warranty claim.

3

### 1. Pre-Suit Notice

Under Alabama law, pre-suit notice to a seller is a necessary precondition to filing a warranty claim, express or implied. *See* Ala. Code § 7-2-607(3)(a) ("Where a tender has been accepted: (a) [t]he buyer must within a reasonable time after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy[.]"); *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983) ("This court, on several occasions, has characterized notice, such as required by § 7-2-607, as a condition precedent to recovery."). Morris concedes in his responsive briefing that this pre-suit notice is "necessary for a claim of breach of warranty." (Doc. 34 at 11.) This notice "must be affirmatively pleaded in the complaint" and "with some degree of specificity." *Lindsey v. Int'l Shoe Co.*, 233 So. 2d 507, 508–09 (Ala. Civ. App. 1970); *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986). Pre-suit notice is required to pursue both express and implied warranty breach claims. *Harman v. Taurus Int'l Mfg., Inc.*, 586 F. Supp. 3d 1155, 1163 (M.D. Ala. 2022); *Smith v. Apple, Inc.*, No. 08-AR-1498-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) ("There is no distinction between implied warranties and express warranties insofar as this precondition is concerned.").

Here, Morris addresses notice in his First Amended Complaint as follows: "[u]pon information and belief, Plaintiff or Plaintiff's health care providers, i.e., Plaintiff's purchasing agents as it concerned the process of buying the SmartPort in question, provided a pre-suit notice to Defendants concerning the breach of implied warranty." (Doc. 26 at ¶ 89.) This broad, conclusory statement is insufficient, as Morris does not state *who* gave pre-suit notice, let alone when, how, and to whom exactly notice was given. Simply put, Morris's notice allegation lacks any factual basis in fact or specificity to avoid dismissal. While specificity to the level of Rule 9(b) is not necessary, "some degree of specificity" is required. *Lindsey*, 233 So. 2d at 509. And Morris has not provided it. *See Smith*, 2009 WL 3958096 at *1

4

(dismissing a warranty claim where no notice was alleged); *Harman*, 586 F. Supp. at 1163 (dismissing a warranty claim where no notice was alleged); *Lowery v. Sanofi-Aventis*, 535 F. Supp. 3d 1157, 1175 (N.D. Ala. 2021) (dismissing an implied warranty claim where no notice was alleged).

And that is probably so because Morris has no knowledge, personally or otherwise, that any pre-suit notice was ever provided to any of the Defendants or anyone else for that matter. Morris's response underscores that observation. In his response, Morris states that "[t]he discovery process will provide information on this issue in due course." (Doc. 34 at 11.) While it is true that discovery could shed more light on whether pre-suit notice was given by others, discovery certainly is not necessary as to Morris himself, who already would be armed with that information. Regardless, discovery follows "the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (citation omitted). As the Supreme Court has noted, "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Since the First Amended Complaint lacks "some degree" of specificity or factual basis concerning pre-suit notice and since Morris all but admits that he lacks any factual basis that such notice was actually provided, Counts Three, Four, and Five are due to be dismissed for failure to state a claim.

### 2. Express Warranty Claim

But even if Morris did adequately plead notice, he also did not adequately plead his express warranty claim. Under Alabama law, express warranties are created by "[a]ny affirmation of fact or promises made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." Ala. Code

§ 7-2-313.  Morris alleges that "Defendants . . . expressly warranted that the SmartPort at issue was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous and life-threatening adverse events, and was adequately tested and fit for its intended use." (Doc. 26 at ¶ 75.)  These allegations read more like assertions of the pleading requirements for implied warranty claims than they do for an actual express warranty made by a seller or manufacturer. Regardless, Morris does not plead where or how he received these alleged affirmations, merely that he did.  He alleges no facts that the Defendants communicated these affirmations to Morris directly.  *See Emody v. Medtronic, Inc.*, 238 F. Supp. 2d 1291, 1296 (N.D. Ala. 2003).

But even if the Court construed the Defendants' *Indications for Use* (IFU) as a "description of goods" which creates an express warranty, that description cannot be construed as an express warranty of safeness.  *See Blackburn v. Shire US, Inc.*, No. 2:16-cv-963-RDP, 2017 WL 1833524, at *9 (N.D. Ala. May 8, 2017), *rev'd on other grounds*, No. 20-12258, 2022 WL 16729466 (11th Cir. Nov. 7, 2022). Nowhere in its IFU does Defendant AngioDynamics warrant that the SmartPort is "safe," as it merely provides warnings and possible complications.[1]  To the contrary, AngioDynamics' IFU represents that the device is intended to be used to deliver medication, imaging contrast, and other fluids, through repeated vascular access, and that its use may cause a number of potential risks, including clot formation.

---

[1] Despite the defunct link provided in Morris's First Amended Complaint (doc. 26 at ¶ 13), the Court has located the *Indications for Use* quoted in Morris's FAC at https://www.angiodynamics.com/about-us/risk-information/ along with warnings and possible complications associated with Defendants' SmartPort device.  The Court may use this document, at this proceeding, without converting this motion to dismiss into a motion for summary judgment because the document was "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

Moreover, Morris cannot claim, and does not do so in his First Amended Complaint, that his physician expressly warranted the SmartPort's safety to him. Under Alabama law, a physician acts "as a learned intermediary between a drug [or device] manufacturer and a patient" because the physician "stands in the best position to evaluate a patient's needs and to assess the risks and benefits of a particular course of treatment for the patient." *Tutwiler v. Sandoz, Inc.*, 726 F. App'x 753, 756 (11th Cir. 2018) (per curiam). Therefore, a drug or medical device manufacturer's duty to warn—through its product's label or IFU—"is limited to the obligation to advise the prescribing physician of any potential dangers that may result from the use of the drug [or device]." *Bodie v. Purdue Pharma Co.*, 236 F. App'x 511, 519 (11th Cir. 2007) (emphasis omitted); *see also Tutwiler*, 726 F. App'x at 756; *Grubbs v. Medtronic, Inc.*, No. 2:18-cv-1468-AKK, 2019 WL 3288263, at *3 n.3 (N.D. Ala. July 22, 2019) ("Alabama has adopted the learned-intermediary doctrine, meaning that a prescription medical device manufacturer's duty to warn extends to physicians."). In short, any affirmation in the IFU was made to the implanting physician, not Morris. And his express warranty claim is due to be dismissed for the reasons listed above.

### 3. Implied Warranty Claims

Counts Four and Five are claims for breaches of the implied warranties of merchantability and fitness for a particular purpose, respectively. Defendants argue that these claims are not viable under Alabama law and are due to be dismissed for this additional reason.

These two implied warranties are governed by specific provisions in Alabama's Commercial Code. *See* Ala. Code § 7-2-314 (merchantability); *id.* § 7-2-315 (fitness for particular purpose). "In general, Alabama law does not recognize a cause of action for breach of implied warranty of merchantability for inherently dangerous products." *Barnhill v. Teva Pharm. USA, Inc.*, 819 F. Supp. 2d 1254,

7

1263–64 (S.D. Ala. 2011) (holding that a prescription drug was presumed to be merchantable and fit for its intended use and dismissing implied-warranty claims because plaintiff provided no evidence to support her claim that the prescription drug was not fit).  Courts have applied this rule in medical device cases.  *See Houston v. Bayer Healthcare Pharm., Inc.*, 16 F. Supp. 3d 1341, 1346–47 (N.D. Ala. 2014) (holding that plaintiff failed to state a claim for breach of implied warranty of merchantability when she alleged that an intrauterine birth control device caused unreasonable danger, not that the device failed to achieve its intended function).

Here, Morris alleges mental and physical pain and suffering, permanent injury, permanent and substantial physical deformity, and that he underwent corrective surgeries, which are all related to an alleged clinical risk of the medical device, not whether it achieved its intended function.  (Doc. 26 at ¶ 54.)  Morris attempts to allege that the device did not function as intended because it prevented him from repeatedly receiving chemotherapy (*see* doc. 26 at ¶¶ 87, 96), but underlying this is Morris's belief that the SmartPort was dangerous and caused him harm.  The fact that these alleged harmful consequences required the removal of the device, which incidentally prevented his doctors from administering chemotherapy through the device, does not mean the device is not fit for its intended use.  *See West v. Janssen Pharm., Inc.*, No. 2:15-cv-553, 2018 WL 1977258, at *13 (M.D. Ala. Apr. 4, 2018) ("The mere presence of harmful consequences which may result from appropriate use will not render a product unfit for purposes of a claim for breach of implied warranty of merchantability."); *Collins v. Novartis Pharm. Corp.*, No. 2:08-cv-438-MHT-PWG, 2015 WL 178157, at *7 (M.D. Ala. Jan. 14, 2015), *report and recommendation adopted in part*, 2015 WL 2183700 (M.D. Ala. May 11, 2015) ("[I]f the product does what it is supposed to, that product is presumed merchantable even if there are also substantial risks connected with the use of that product."); *Shell v. Union Oil Co.*, 489 So. 2d 569, 572 (Ala. 1986) ("[T]he U.C.C. does not impose

upon the seller the broader obligation to warrant against health hazards in the use of the product when the warranty of commercial fitness has been complied with."). In fact, the First Amended Complaint provides that the device functioned as intended from implantation in December 2020 until May 5, 2021, following its removal. (Doc. 26 at ¶¶ 37, 44.) And Morris has not alleged that the SmartPort, prior to the development of a known side effect, was not functioning as intended.

The product at issue in this case, the SmartPort device, has a clear function other than consumption. It is used for "repeated access of the vascular system for delivery of medication, nutritional supplementation, fluid, blood, blood products, sampling of blood and power injection of contrast media for imaging." (Doc. 26 at ¶ 13.) The implied warranty is therefore not breached unless the SmartPort device failed to achieve this function, regardless of what other harms it caused. That does not mean, of course, that a catheter device manufacturer can produce a device with unlimited danger so long as the device actually administers drugs vascularly, which it did here for five months. It simply means that these dangers must be addressed by claims under tort theories such as the AEMLD, rather than under the Commercial Code. Because the only SmartPort defect that Morris alleges in this case is that it caused complications with venous thrombosis and pulmonary embolism, Morris has not stated a claim for breach of implied warranty, and those counts are due to be dismissed.

### B. Fraud-based Claims

Counts Six, Seven, and Eight are fraud-based claims for misrepresentation and suppression. Defendants argue these claims do not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and should therefore be dismissed.

Fraud-based claims, including misrepresentation and suppression, are subject to a heightened pleading standard under Rule 9. *See* Fed. R. Civ. P. 9(b) ("a party

must state with particularity the circumstances constituting fraud"); *Ziemba v. Cascade Int'l, Inc.*, 256 F. 3d 1194, 1202 (11th Cir. 2001). When a fraud-based claim is alleged, Rule 9(b) "requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they mislead the plaintiff, and; (4) what the defendant obtained as a consequence of fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)); *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (per curiam).

Both of Morris's misrepresentation claims contain similar allegations—that the Defendants (1) represented through labeling, advertising, marketing materials, and other similar documents, that the SmartPort had been tested and was safe to administer chemotherapy medication; and that (2) the SmartPort "was safer and/or more effective than other port/catheter systems." (Doc. 26 at ¶ 101; *see id.* at ¶ 106.) And as to his fraudulent suppression claim, that the Defendants (1) "fraudulently, intentionally and/or negligently concealed or failed to disclose material facts about the SmartPort at issue as it related to the SmartPort-associated serious and life-threatening adverse events," (2) concealed or failed to disclose adverse information that Defendants knew or should have known regarding SmartPort defects and dangers, and (3) purposely concealed this information so Morris would agree to be implanted with the device. (*Id.* at ¶¶ 114–16.) None of these allegations contain the requisite information required by Rule 9(b). *See In re Galectin Therapeutics, Inc.*, 843 F.3d at 1269.

Morris claims that he has adequately pleaded the "who, what, where, when, and how" of the alleged fraud and further argues that his First Amended Complaint

is sufficient due to the "complexity" of the allegations. (Doc. 34 at 12–14, citing *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957).) In doing so, Morris also attempts to distinguish the factual circumstances present in *In re Galectin Therapeutic,* 843 F.3d 1257, and *Am. Dental Ass'n v. Cigna Corp*, 605 F.3d 1283 (11th Cir. 2010), cited as supporting precedent for the Defendants' position, from Morris's own fraud-based allegations.

It is true, as Morris argues, that *In re Galectin Therapeutics* and *Am. Dental Ass'n* dealt with S.E.C. Rule 10b-5(b) and RICO charges, respectively. However, nothing in these opinions relieves Morris of his obligation under Rule 9(b) to plead the time and place of the fraudulent statements, the content of the statements, or what documents he relied on to induce him to agree to implantation of the device. *See Garfield*, 466 F.3d at 1262. As a result, Count Six, negligent misrepresentation, and Count Seven, fraudulent misrepresentation, are due to be dismissed for Morris's failure to meet the heightened pleading standards of Rule 9(b).

Fraudulent suppression is a different type of fraud claim. Under Alabama law, the "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relation of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. To state a claim, Morris must establish, "(1) that [Defendants] had a duty to disclose [the] material existing fact; (2) that [Defendants] suppressed this material fact; (3) that [Defendants'] suppression of this fact induced [them] to act or to refrain from acting; and (4) that [they] suffered actual damage as a proximate result." *Pearson's Pharmacy, Inc v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1277–78 (M.D. Ala. 2007) (quoting *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1998)). "A duty to speak depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." *Id.* at 1278 (quoting *Deupree v. Butner*, 522 So. 2d 242, 245

(Ala. 1988)). "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested." *Id.* (quoting *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954–55 (Ala. 1995)).

Here, Morris alleges that "Defendants had a duty to disclose to healthcare providers . . . material facts about the SmartPort at issue as it related to the SmartPort-associated serious and life-threatening adverse events." (Doc. 25 at ¶ 113.) Notably absent from Morris's First Amended Complaint are allegations that he made a direct inquiry to the Defendants or factual allegations suggesting the existence of a confidential or special relationship with the Defendants that would give rise to a duty by the Defendants to affirmatively disclose certain facts to him absent an inquiry. *Pearson's Pharmacy*, 505 F. Supp. 3d at 1278. As such, his fraudulent suppression claim is due to be dismissed.

Morris's fraud-based claims are not novel issues, as courts within this Circuit routinely dismiss fraud-based claims involving medical devices when the complaint does not plead the claims with sufficient particularity. *See Holland v. Ethicon, Inc.*, No. 2:19-cv-787-WKW, 2021 WL 3432833, at *2 (M.D. Ala. Aug. 5, 2021) (dismissing misrepresentation claims in a medical device case for failure to meet the pleading standard where plaintiff did not allege the precise misrepresentations made, nor the time, place and person responsible for those misrepresentations); *Am. Dental Ass'n*, 605 F.3d at 1291; *Grubbs*, 2019 WL 3288263, at *5 (dismissing misrepresentation claim in a medical device case where plaintiff included only general allegations and failed to identify which documents contained those misrepresentations, finding the complaint "falls shorts of stating the precise statements made, or the time and place of the alleged misrepresentations"); *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1287–88 (N.D. Ga.

Case 1:23-cv-00294-RAH-SMD   Document 36   Filed 02/07/24   Page 13 of 14

2014) (dismissing fraud and misrepresentation claims that did not plausibly demonstrate justifiable reliance under Rule 9(b)).

And here, Morris's fraud-based claims are rife with "the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678, and *only* conclusory statements. (Doc. 26 at ¶¶ 100–22.)  These allegations do not even pass the standard under Rule 8, much less the heightened pleading standard of Rule 9.  Therefore, Counts Six, Seven, and Eight are due to be dismissed for failure to state a claim.

### C. Morris's Request To File An Amended Complaint

Morris argues in his response that he should be given leave to file a Second Amended Complaint if the Court finds his current operative complaint deficient.  It is true that Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires" and that trial courts have broad discretion in permitting or refusing to grant leave to amend.  *Forman v. Davis*, 371 U.S. 178, 182 (1962).  Leave should be "freely given" when:

> In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id*.  Defendants counter by pointing out that Morris previously amended his complaint after Defendants filed a motion to dismiss and that this First Amended Complaint only contains minor changes, none of which cured the deficiencies of the original Complaint.

The Court is under no obligation to allow Morris to amend his complaint for a second time to "cure deficiencies by amendments previously allowed[,]" especially through an embedded request not made by formal motion, and the Court will not allow it now.  *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x

13

925, 930 (11th Cir. 2016) (per curiam) (holding that the district court did not abuse its discretion when it dismissed a complaint with prejudice after the plaintiff already had a chance to amend its complaint).

## V. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Defendants' *Partial Motion to Dismiss* (Doc. 30) is **GRANTED**.

2. Counts Three, Four, Five, Six, Seven, and Eight of Plaintiff's First Amended Complaint are **DISMISSED**.  Counts One and Two shall proceed.

**DONE** on this the 7th day of February 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE